OPINION OF THE COURT
Hancock, Jr., J.
Under Education Law § 3602 (27), a school district may, upon application, become eligible to receive an apportionment of Excellence in Teaching (EIT) aid, to be used solely to improve teachers’ salaries. The question in this appeal is whether a school district may be compelled pursuant to the Taylor Law (Civil Service Law art 14) to bargain with the teachers’ union over its decision whether to make such application. Stated another way, is a school district’s decision whether to apply for EIT funds a proper subject for mandatory bargaining so as to make the refusal to bargain the proper basis for an improper practice charge under Civil Service Law § 209-a (1) (d)? We agree with the Appellate Division that the answer to this question is "No”. Accordingly, there should be an affirmance.
I
In April 1986, the Legislature enacted the Excellence in Teaching program as part of the aid to localities budget bill, thereby providing State funds to supplement the salaries of eligible employees of local school districts (Education Law § 1950 [15] [a]; § 3602 [27]; L 1986, ch 53, §§ 20, 49). Under regulations adopted by the Commissioner to implement the EIT program, as directed by the Legislature (§ 3602 [27] [f]), a school district may become eligible for EIT funds upon making an application through its board of education (8 NYCRR 175.35). The regulations specify that any EIT salary increases must be added to the teachers’ regular salaries for the pur *399 pose of computing their fringe benefits (8 NYCRR 175.35 [e] [4]). But the regulations expressly forbid any expenditure of the EIT moneys for these additional fringe costs (8 NYCRR 175.35 [e] [5]), thus making it necessary for the board to fund the additional fringe costs from other sources.[1]
On September 9, 1986, the Board of Education of petitioner Elmira City School District (the district) voted not to apply for EIT funds. It is undisputed that the Board’s decision rested on the fact that acceptance of EIT funds would result in the district having to pay, over a two-year period, approximately $100,000 for additional Social Security taxes, retirement system assessment and other attendant "fringe benefits”, which would be in addition to any benefits provided for in the parties’ existing collective bargaining agreement effective July 1, 1985 through June 30, 1990. On September 10, respondent teachers’ association (the association) demanded that the district negotiate its decision. On September 17, the district refused and the association filed an improper practice charge with respondent Public Employment Relations Board (PERB) based upon the refusal.
After the parties waived a hearing before PERB, the matter was submitted on a stipulated record to an Administrative Law Judge who held that the district had violated Civil Service Law § 209-a (1) (d) by refusing to negotiate. PERB affirmed the ALJ’s decision and ordered that the district "forthwith negotiate [its decision] in good faith” whether to apply for EIT funds for the 1986-1987 school year, and for subsequent school - years, as well, upon the association’s demand.
The district commenced this CPLR article 78 proceeding seeking to annul PERB’S determination. Upon transfer from Supreme Court pursuant to CPLR 7804 (g), the Appellate Division, with two Justices dissenting, annulled the determination and granted the petition. Both the majority and dissent noted that Education Law § 3602 (27) expressly provides that a school district must separately negotiate decisions concerning the distribution of EIT funds, but makes no provision concerning a school district’s duty to negotiate a decision to apply for EIT funds. From the omission of such direction in the statute, the majority concluded that a duty to negotiate *400 the application decision "should not [be] read into” Education Law § 3602 (27) because "when the Legislature was considering the extent to which negotiations over EIT funds would be required, it could have extended the duty to negotiate to the application decision if it had so intended” (144 AD2d 35, 39). The dissenters took the position that PERB’s determination that the application decision was subject to mandatory bargaining was rational because such a decision affects the terms and conditions of employment. Finding nothing in the statute directly prohibiting mandatory bargaining, the dissenters concluded that the determination should be upheld. We agree with the Appellate Division majority that the EIT application decision is not a subject of mandatory bargaining.
II
The question before us is this: did the Legislature intend that a district’s decision over whether to apply for EIT funds should be subject to mandatory bargaining? We hold that it did not.[2] From our analysis of Education Law § 3602 (27), we conclude that a school district’s decision on whether to make such application is one which the Legislature intended should be left to the school board’s discretion.[3] Nothing in subdivision (27) purports to make it mandatory for a school district to apply for EIT funds. On the contrary, subdivision (27) provides that "upon application a school district shall be eligible for an excellence in teaching apportionment” (emphasis added).
That the Legislature intended to establish a program where the application decision would not be subject to mandatory negotiation is reflected in the statutorily required implementing regulations (8 NYCRR 175.35; see, Education Law § 3602 [27] [f]) which specifically provide that the application is to be made by the board of education (see, 8 NYCRR 175.35 [b]), the *401 legislative body,[4] whose approval would be required to make any agreement binding (see, Civil Service Law § 201 [12]; § 204-a [1]; see generally, 8 NYCRR 175.35 [c]).
PERB and the association, however, purport to find in Education Law § 3602 (27) a legislative intent that collective negotiations be required over the EIT application decision as well as the decision on distribution of EIT funds which have been sought and obtained. They rely on the last sentence in subdivision 27 (a) which states: "In school districts where the teachers are represented by certified or recognized employee organizations, all salary increases funded pursuant to this subdivision shall be determined by separate collective negotiations conducted pursuant to the provisions and procedures of article fourteen of the civil service law, notwithstanding the existence of a negotiated agreement between a school district and a certified or recognized employee organization.” (Emphasis added.) The language of this provision, however, does not support their position.
The evident purpose of this provision in paragraph (a) is not only to mandate collective negotiations over the distribution of EIT funds, but to remove any impediment to such negotiations which might otherwise result where, as here, an ongoing collective bargaining agreement between the district and the union exists. By providing that the EIT negotiations be separate, the provision obviates any possible conflict between the EIT salary distribution negotiations and an existing collective bargaining agreement. Moreover, because the statute specifically provides for collective negotiations only over EIT salary distribution decisions, the inference may be drawn from the failure to require negotiations over EIT application decisions that the Legislature intended that such negotiations not be required (see generally, McKinney’s Cons Laws of NY, Book 1, Statutes § 240).
To adopt the position urged by PERB and the association— that because the EIT program implicates teachers’ salaries application decisions are necessarily a subject for bargaining— would frustrate the intent of this statute and its implementing regulations that the board of education be the decision-making body and that negotiations over its application decisions not be mandatory. We do not suggest that the district *402 may not voluntarily bargain over EIT funding, subject, of course, to the board’s right to disapprove any agreement reached from the process (see, Civil Service Law § 201 [12]; § 204-a [1]). We simply hold that the legislative intent is that the district not be compelled to bargain over the board’s application decision. PERB’s contrary construction of Education Law § 3602 (27) does not support a different result. Where " 'the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent’, [PERB’s] interpretations need not be accorded * * * deference” (Matter of Town of Mamaroneck PBA v New York State Pub. Employment Relations Bd., 66 NY2d 722, 724 [quoting Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459]).
Accordingly, because the decision whether to apply for EIT funds cannot be the subject of mandatory bargaining, the Appellate Division judgment should be affirmed, with costs.

. Indeed, any expenditure of an EIT grant-in-aid made in contravention of this mandate may be disallowed and deducted from the district’s next State aid payment (8 NYCRR 175.35 [e] [5]).

. It is undisputed that EIT funds which have been obtained for increased teachers’ salaries under Education Law § 3602 (27) must be the subject of collective bargaining. Indeed, the statute specifically provides that "all salary increases funded pursuant to [subd 27] shall be determined by separate collective negotiations conducted pursuant to the provisions and procedures of article fourteen of the civil service law” (Education Law § 3602 [27]).

. Indeed, both the ALJ and PERB, in affirming the AU’s decision, acknowledged that the EIT "legislation vests districts with discretion to apply for the funds” (ALJ decision, at 9; see, PERB decision, at 7-8). Neither the association nor PERB contends that a school district could be compelled either by an arbitrator or by a court to make an application for EIT funding under this statute.

. Civil Service Law § 201 (11) provides that "the term 'legislative body of the government,’ in the case of school districts, means the board of education, board of trustees or sole trustee, as the case may be.”