OPINION OF THE COURT
Kaye, J.
In the statute permitting a Board of Cooperative Educational Services (BOCES) to offer academic summer school programs (Education Law § 1950 [4] [bb]), the Legislature clearly manifested its intention that school districts’ decisions to participate in such cooperative educational programs not be subject to mandatory collective bargaining with teachers’ unions. We therefore grant the school districts’ petition to nullify PERB’s determination requiring that the decisions be bargained.
BOCES was established some 40 years ago to provide added services, on a cooperative basis, for combined school districts (see, L 1948, ch 861, § 1). Today, several BOCES exist throughout the State, each made up of varying numbers of school districts, with their own governing boards (drawn from the *625 component school districts), revenues (principally derived from participating districts), and teaching staff (see generally, Education Law § 1950). While the Monroe BOCES, for example, had over the years furnished many services for appellant school districts — particularly services that were not part of their traditional school curriculum — before 1984 it had no statutory authority to offer them academic programs.
In 1984, as part of a major reform intended to upgrade the quality of education in this State, the Legislature amended the Education Law to permit BOCES to "provide academic and other programs and services in the school year on a cooperative basis, including summer programs and services.” (Education Law § 1950 [4] [bb].) Along with increased requirements for high school graduation, the reform envisioned expanded cooperative use of school resources, including BOCES, both by allowing BOCES to offer credit-bearing academic courses and by providing State reimbursements to school districts for participation in BOCES programs (see, New York State Board of Regents, Action Plan to Improve Elementary and Secondary Education Results in New York, at 47-48 [1984]).
Prior to the 1984 amendment, the three appellant school districts had each year conducted separate summer school programs, employing teachers who were (or became) members of the bargaining units represented by respondent teachers unions. The collective bargaining agreements between the school districts and the unions in fact covered summer teaching, and provided for summer school workday, salary, sick leave, pay dates and hiring preferences.
Early in 1985, however, spurred by the new legislation, appellants outlined their summer school curriculum requirements to the Monroe BOCES, and it undertook to satisfy them, offering a combined program for students of the three districts. Each district, with the approval of the Commissioner of Education, then elected to accept the BOCES program in place of its own, and entered into a written agreement which provided for the payment of fees for each enrollee; unlike the district’s own summer programs, partial State reimbursement was available for fees paid to BOCES. The BOCES courses were all part of the standard secondary school curriculum, but the cooperative program offered a far wider selection than any of the districts had offered in previous years, to a greatly increased number of students. (The districts individually had chosen not to offer courses with fewer than 12 students.)
*626 While refusing to negotiate their decision with respondent unions, appellants offered to bargain the impact of the decision, but the unions refused and filed improper practice charges with PERB. Following several days of testimony, the PERB Administrative Law Judge held that each of the districts had violated Civil Service Law § 209-a (1) (d) by unilaterally contracting-out the work exclusively performed by bargaining unit teachers and refusing to negotiate that decision. PERB consolidated the three cases and, on review, agreed with the Administrative Law Judge that the districts were subcontracting work they otherwise would have performed themselves, which was a mandatory subject of negotiation where the decision turned on a reduction of labor costs rather than a change in level of service; PERB therefore ordered the districts to cease and desist from such practices, together with other relief. The present article 78 proceeding ensued, culminating in the Appellate Division’s confirmation of PERB’s determination and dismissal of the petition, without opinion. We now reverse and grant the school districts’ petition.
The underlying legal issue before us is whether the employers’ decision to contract with BOCES for an academic summer school program in place of their own was a mandatory subject of negotiation (as the unions urge), or a prohibited or permissive bargaining subject (as the school districts contend) (see, Matter of Board of Educ. v New York State Pub. Employment Relations Bd., 75 NY2d 660 [decided today]).
In approaching this issue, we are mindful of the limited scope of our review as to matters within PERB’s expertise under the Civil Service Law (see, Civil Service Law § 209). However, statutory construction is a function for the courts; PERB is accorded no special deference in the interpretation of statutes (see, Matter of Rosen v Public Employment Relations Bd., 72 NY2d 42, 47-48). Indeed, in its decision PERB itself made only scant reference to the Education Law policy arguments that are at the heart of this appeal.
We conclude that the central legal question is answered as a matter of statutory construction, without reaching the soundness or reasonableness of PERB’s determination under the Civil Service Law: Education Law § 1950 (4) (bb) — the 1984 amendment — clearly manifests a legislative intention that a school district’s decision to contract with BOCES for an academic summer school program not be subject to mandatory collective bargaining.
*627 The BOCES statute neither explicitly mandates nor explicitly prohibits collective bargaining (see, by contrast, Retirement and Social Security Law § 470). While legislative expression is the best evidence of legislative intent, it is not the only evidence; legislative intent may also be implied from the words of an enactment. It should be apparent, however, that in order to overcome the strong State policy favoring the bargaining of terms and conditions of employment, any implied intention that there not be mandatory negotiation must be "plain and clear” (Syracuse Teachers Assn. v Board of Educ., 35 NY2d 743, 744), or "inescapably implicit” in the statute (Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 778; see also, Matter of City School Dist. v New York State Pub. Employment Relations Bd., 74 NY2d 395). Anything less threatens to erode and eviscerate the mandate for collective bargaining.
We conclude that the 1984 amendment to the BOCES statute clearly evidences the Legislature’s intent that bargaining not be mandatory. In that the unions had not, in the several decades of BOCES’ operation, previously demanded bargaining of requests for shared services (albeit the scope of services was much more limited), it is hardly surprising that the 1984 amendment was not even more specific in reflecting this intention.
Education Law § 1950 prescribes an annual procedure for securing BOCES services, beginning with requests by component school districts, followed by various layers of approvals, and culminating in the districts’ final election to contract with BOCES — all to be accomplished between January 15 and April 1, for school year programs and services beginning in September (see, Education Law § 1950 [4] [d]). The 1984 amendment authorizes BOCES to establish an academic summer school program only upon the request of two or more school districts and the approval of the Commissioner of Education. The Commissioner of Education may approve such a program only if he finds that it serves the statutory goals of providing additional opportunities for pupils, effecting cost savings to the districts requesting the programs and services, offering greater opportunity for pupils to earn credit for academic subjects, and insuring greater or more appropriate use of BOCES facilities (Education Law § 1950 [4] [bb] [2]).
Appellants urge that the finely calibrated legislative scheme, requiring joint action by at least two school districts *628 (and conceivably many more) and the approval of the Commissioner of Education, on a tight timetable, alone negates any mandate for bargaining; if each participating district additionally had to bargain to impasse, they contend, the deadlines simply could not be met. Whether or not the statutory scheme is alone sufficient evidence of a legislative intent not to mandate bargaining, we are persuaded to this conclusion by an additional component of the 1984 amendment — section 1950 (4) (bb) (5).
That section expressly addresses the subject of job protections for teachers in the event of a BOCES takeover. It provides that "[a] teacher whose position in a school district is abolished as the result of a takeover of an academic program by a board or boards of cooperative educational services shall be accorded the rights provided by [Education Law § 3014-a].” Education Law § 3014-a ("Teacher’s rights as a result of a board or boards of cooperative educational services taking over a program formerly operated by a school district or districts or by a county vocational education and extension board”), in turn, directs that such a teacher shall be considered an employee of the BOCES assuming the program, and it proceeds to outline in considerable detail the consequences that will follow when there are too few BOCES teaching positions available, including preferential hiring without loss of seniority-based benefits.
Given this statutory scheme, we are satisfied that the Legislature’s deliberate incorporation of section 3014-a governing teachers’ rights in the event of a BOCES takeover manifested an intention to establish, within the Education Law, a comprehensive package for a school district’s decision to contract for a BOCES program, and thus to withdraw that decision from the mandatory negotiating process.
Accordingly, the judgment of the Appellate Division should be reversed, with costs, and the petition granted.
Chief Judge Wachtler and Judges Simons, Alexander, Titone and Bellacosa concur; Judge Hancock, Jr., taking no part.
Judgment reversed, etc.