[628 NYS2d 824]

In the Matter of the Arbitration between WATKINS GLEN
CENTRAL SCHOOL DISTRICT et al., Appellants, and WATKINS
GLEN FACULTY ASSOCIATION et al., Respondents.

Third Department, June 22, 1995

## APPEARANCES OF COUNSEL

*Sayles, Evans, Brayton, Palmer & Tifft,* Elmira *(Cynthia S. Hutchinson* of counsel), for appellants.

*Bernard F. Ashe,* Albany *(Terrence F. Nieman* of counsel), for respondents.

## OPINION OF THE COURT

YESAWICH JR., J.

Beginning in the 1991-1992 school year, petitioner Watkins Glen Central School District (hereinafter the District) contracted with petitioner Schuyler-Chemung-Tioga Board of Cooperative Educational Services (hereinafter BOCES) for the services of a four-tenths full-time music teacher and a five-tenths full-time technology teacher. In 1992, after the District renewed its contract with BOCES for the 1992-1993 school year, respondent Watkins Glen Faculty Association (hereinafter the Association), the organization representing teachers and other nonsupervisory employees of the District, filed a grievance charging the District with violating a provision of the Association's collective bargaining agreement that prohibited the District from subcontracting teaching assignments for credit-bearing courses. Ultimately, an arbitrator found that the District's arrangement with BOCES did violate the collective bargaining agreement, and made an award compensating the Association and proscribing future subcontracting of a similar nature.

In this CPLR article 75 proceeding, petitioners seek vacatur of that award, arguing, *inter alia,* that as a matter of public policy, a school district cannot enter into an agreement which prohibits it from making use of the services provided by a Board of Cooperative Educational Services. The rationale underlying this argument is that because the establishment of a State-wide program for the formation of such Boards *(see generally,* Education Law § 1950) was designed to further the important goal of improving educational opportunities for

students in rural areas, a school district should be precluded from thwarting the legislative intent by bargaining away its right to utilize the services made available through the program. Supreme Court, disagreeing, confirmed the award, prompting these appeals by petitioners.

The relevant legislation evinces an intent to reserve to school districts (subject to the approval of the Commissioner of Education) the right to determine whether, and how, to make use of the services provided by a Board of Cooperative Educational Services, thus removing such issues from the scope of mandatory collective bargaining *(see, Matter of Webster Cent. School Dist. v Public Empl. Relations Bd.,* 75 NY2d 619, 627). To say that a matter need not be negotiated, however, is not to say that it is nonnegotiable, if all parties agree otherwise; while a school district cannot be compelled to negotiate with respect to matters that the Legislature has committed to its sound discretion, or those involving policy decisions that relate to its primary educational mission, "[t]here is no absolute bar to collective bargaining over such decisions" *(Matter of Board of Educ. v New York State Pub. Empl. Relations Bd.,* 75 NY2d 660, 670). It is only in those areas in which a statutory or constitutional mandate positively requires that action be taken, either explicitly or by providing that the obligations involved are nondelegable, or an equally strong public policy simply leaves no room for negotiation, that bargaining is banned *(see, supra,* at 667-668).

No such unequivocal directive exists here; as in *Matter of Board of Educ. v New York State Pub. Empl. Relations Bd. (supra),* the relevant legislation gives each school district wide discretion to decide, in accordance with its own needs and priorities, whether and to what extent to use the resources available through a Board of Cooperative Educational Services. Permitting a school district to bind itself, voluntarily, to an agreement that prevents it from contracting for certain types of services no more contravenes the policies underlying the pertinent statutes than does according it the freedom to decline to make use of such services, a privilege any school district may exercise. Indeed, it would appear, from the broad discretion reposed in the school districts in this regard, that a fundamental purpose behind the implementation of the Board of Cooperative Educational Services program is to expand the alternatives available to the school districts, so that each may select those which best serve the needs of its particular student body. Allowing the issue to be used at the bargaining

table, at a school district's option, serves, rather than frustrates, this goal.

The District's voluntary waiver of its right to obtain academic services from BOCES not being, per se, invalid, there is no reason to vacate the award at issue, which, in our view, represents a reasonable exercise of the authority conferred upon the arbitrator by the parties' agreement, and is neither irrational nor violative of any strong public policy (see, Matter of Board of Educ. v Arlington Teachers Assn., 78 NY2d 33, 37; Matter of State of New York [Civil Serv. Empls. Assn.], 179 AD2d 941, 942).

MIKOLL, J. P., CREW III, WHITE and PETERS, JJ., concur.

Ordered that the order and amended order are affirmed, with costs.