OPINION OF THE COURT
Dan Lamont, J.
Petitioner Vestal Employees Association (Association) brings this CPLR article 78 proceeding challenging a determination of the Public Employment Relations Board (PERB) issued on May 28, 1997 finding that the transfer of printing services to Tioga-Broome Board of Cooperative Educational Services (BOCES) is not subject to mandatory collective bargaining upon the grounds that such determination was arbitrary or capricious, an abuse of discretion, and affected by an error of law.
Respondent PERB has filed an answer requesting that the petition be dismissed upon the grounds that the decision was correctly based upon its interpretation of Matter of Webster Cent. School Dist. v Public Empl. Relations Bd. (75 NY2d 619 [1990]). In the event that the court should find that PERB’s decision was affected by an error of law, respondent PERB in its brief requests the court to remand the case to PERB in order to address the other arguments raised in the District’s exceptions.
Respondent Vestal Central School District (District) has filed an answer requesting that the court uphold PERB’s determination and dismiss the petition. In the event that the court does not uphold PERB’s determination upon the law, the District requests the court to dismiss the petition upon other grounds not determined by PERB.
BACKGROUND
On or about November 29, 1995, the Association filed an improper practice charge pursuant to Civil Service Law § 209-a (1) (a) and (d) against the District regarding the contracting of printing services to BOCES. The charge alleged that the District violated Civil Service Law § 209-a (1) (d) by unilaterally transferring exclusive bargaining unit work out of the Association to BOCES without negotiating.
Joseph Misulich (an offset duplicating machine operator) originally performed printing and copying services exclusively *100 for the District. Effective September 1,1995, he was transferred and became an employee of BOCES performing printing and copying services for both the District and the Union Endicott Central School District pursuant to a "Co-Ser” contract. A "CoSer” is a service shared by two or more school districts and administered through BOCES.
On or about January 22, 1997, an Administrative Law Judge (ALJ) issued a decision ruling that the District violated Civil Service Law § 209-a (1) (d) by transferring Mr. Misulich to BOCES. The District filed written objections to the ALJ’s decision, and PERB issued a decision on or about May 28, 1997 reversing the decision of the ALJ and dismissing the improper practice charge against the District. In making its determination, PERB relied upon the Court of Appeals decision in Matter of Webster Cent. School Dist. v Public Empl. Relations Bd. (75 NY2d 619 [1990], supra) holding that summer academic services transferred to a BOCES pursuant to Education Law § 1950 (4) (bb) are exempt from mandatory collective bargaining with teachers’ unions.
This CPLR article 78 proceeding ensued.
EDUCATION LAW § 1950 (4) (d)
Education Law § 1950 (4), as relevant to this proceeding, states:
"The board of cooperative educational services shall have the power and duty to * * *
"d. [a]t the request of component school districts, and with the approval of the commissioner of education, provide any of the following services on a cooperative basis: school nurse teacher, attendance supervisor, supervisor of teachers, dental hygienist, psychologist, teachers of art, music, physical education, vocational subjects, guidance counsellors, operation of special classes for handicapped children, as such term is defined in article eighty-nine of this chapter; pupil and financial accounting service by means of mechanical equipment; maintenance and operation of cafeteria or restaurant service for the use of pupils and teachers while at school, and such other services as the commissioner of education may approve(Emphasis supplied.)
Education Law § 1950 (4) (bb) states: "Boards of cooperative educational services may provide academic and other programs and services in the school year on a cooperative basis, including summer programs and services.”
*101 The Court of Appeals in Matter of Webster Cent. School Dist. v Public Empl. Relations Bd. (75 NY2d 619 [1990], supra) held that the Legislature clearly manifested its intention that school districts’ decisions to participate in cooperative summer educational programs not be subject to mandatory collective bargaining with teachers’ unions. The Court discussed the statutory scheme prescribed by Education Law § 1950 in general and was strongly persuaded by Education Law § 1950 (4) (bb) (5), which provides job protections for displaced teachers, in making its determination that the summer programs not be subject to mandatory bargaining.
The primary legal issues before this court are whether PERB’s August 28, 1997 decision was arbitrary, capricious, an abuse of discretion, or affected by an error of law in holding that: (1) Education Law § 1950 (4) (d) applies to noninstructional services including printing services; and (2) Education Law § 1950 (4) (d) reflects a plain and clear legislative intent to exempt the District’s decision to contract with BOCES for printing services from mandatory collective bargaining.
NONINSTRUCTIONAL PRINTING SERVICES
This court holds and determines that the Commissioner of Education’s and PERB’s determination that "printing services” are included within the language "such other services as the commissioner of education may approve” pursuant to Education Law § 1950 (4) (d) was reasonable and rationally based.
Education Law § 1950 (4) (d) as effective during this proceeding also included "pupil and financial accounting service by means of mechanical equipment” among those services specifically enumerated as approvable cooperative services. The inclusion of a noneducational service in the enumerated services provides a rational basis for the Commissioner and PERB to determine that "printing services” are approvable services.
In making this determination, the court also takes note of Education Law § 1950 (4) (d) (2) (as added by L 1996, ch 474), effective after this proceeding, which prohibits the Commissioner from authorizing as an aidable shared service any cooperative maintenance services or municipal services, including but not limited to, lawn mowing services and heating, ventilation or air-conditioning repair or maintenance or trash collection, or any other municipal service as defined by the Commissioner. This statute further provides that the Commissioner may approve the continuation of such services for one year if provided in the 1995-1996 school year.
*102 By enacting Education Law § 1950 (4) (d) (2) and thereby excluding certain services from "such other services as the commissioner may approve” (Education Law § 1950 [4] [d] [1], as amended by L 1996, ch 474), the Legislature has clearly manifested its intent that such noninstructional services as printing services are included within the provisions of Education Law § 1950 (4) (d).
MANDATORY COLLECTIVE BARGAINING
As discussed by the Court of Appeals in Webster (supra), Education Law § 1950 prescribes an annual procedure for securing BOCES services, beginning with requests by component school districts by January 15 of each year; BOCES plan submission for department approvals by February 1 of each year; notification of plan approvals by March 15 of each year; component school district notifications of which shared services they will participate in by April 1 of each year; and final executed contracts for shared services filed with the Commissioner by August 1 of each year. Education Law § 1950 (4) (d) requires that the request for shared services be made by more than one school district and also requires the approval of the Commissioner of Education.
The Webster Court left unanswered whether or not this finely calibrated statutory scheme—requiring joint action by at least two school districts and the approval of the Commissioner of Education on a tight timetable—standing alone is sufficient evidence of a legislative intent not to mandate collective bargaining. The Court of Appeals was persuaded, in the context of Education Law § 1950 (4) (bb), that the legislative intent not to mandate bargaining was further evidenced by an additional component under that section which provided for the job protection of teachers in the event of a BOCES takeover (Education Law § 1950 [4] [bb] [5]).
There is no similar job protection afforded to nonteaching personnel under Education Law § 1950 (4) (d). PERB and the District contend that this distinction is not sufficient to take this case outside the scope of the Webster holding. The Association contends that Webster (supra) is inapplicable to this case: (1) because of the lack of statutory job protection afforded to nonteaching civil service staff; and (2) because the timing requirements of the statute are not so critical and compelling in relation to ongoing nonteaching services such as printing services. In support of its first contention, the Association has attached a copy of 1995 NY Assembly Bill A 6642 from the *103 1995-1996 legislative session which would have afforded staff personnel the same job protection as teachers as discussed in Webster—but which the Legislature did not enact.
In determining the issues within this proceeding, the court is aware of the limited scope of review with respect to matters within PERB’s expertise under the Civil Service Law (see, Civil Service Law § 209). However, as PERB has recognized in this case by deferring to the Court of Appeals Webster decision (supra), statutory construction is clearly a function of the courts, with no special deference to be given PERB’s interpretation of statutes (Matter of Rosen v Public Empl. Relations Bd., 72 NY2d 42 [1988]).
The Court of Appeals in Webster (supra, at 627) wrote: "The BOCES statute neither explicitly mandates nor explicitly prohibits collective bargaining (see, by contrast, Retirement and Social Security Law § 470). While legislative expression is the best evidence of legislative intent, it is not the only evidence; legislative intent may also be implied from the words of an enactment. It should be apparent, however, that in order to overcome the strong State policy favoring the bargaining of terms and conditions of employment, any implied intention that there not be mandatory negotiation must be 'plain and clear’ (Syracuse Teachers Assn. v Board of Educ., 35 NY2d 743, 744), or 'inescapably implicit’ in the statute (Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 778; see also, Matter of City School Dist. v New York State Pub. Employment Relations Bd., 74 NY2d 395). Anything less threatens to erode and eviscerate the mandate for collective bargaining.”
This court holds and determines that the aforementioned finely calibrated statutory scheme, requiring joint action by at least two school districts (and conceivably many more) and the approval of the Commissioner of Education, on a tight timetable, standing alone negates any mandate for bargaining.
The Court of Appeals in Webster concluded that the 1984 amendment to the BOCES statute (L 1984, ch 53, § 14, adding Education Law § 1950 [4] [bb]) clearly evidences the Legislature’s intent that bargaining not be mandatory (Matter of Webster Cent. School Dist. v Public Empl. Relations Bd., supra, at 627). The Court of Appeals stated: "In that the unions had not, in the several decades of BOCES’ operation, previously demanded bargaining of requests for shared services (albeit the scope of services was much more limited), it is hardly surprising that the 1984 amendment was not even more specific in *104 reflecting this intention.” (Supra.) This court notes that it is likewise hardly surprising that the Legislature did not expressly discuss any mandatory bargaining issues, even after the Webster case in 1990, in its 1996 amendments to Education Law § 1950.
The lack of job protection and the Legislature’s failure to enact job protection for nonteaching civil service employees is not determinative of whether mandatory bargaining should apply to services transferred under Education Law § 1950 (4) (d). As previously noted, the Court of Appeals in Webster (supra) not only concluded that contracts for BOCES-provided services were not subject to mandatory collective bargaining, but also expressly recognized that, historically, requests for shared services from BOCES have not been the subject of bargaining.
In Webster (supra), the Court of Appeals also relied upon an additional component of the 1984 amendment—section 1950 (4) (bb) (5) which expressly addresses the subject of job protection for teachers in the event of a BOCES takeover. This court notes that the affected noninstructional employee (now a BOCES employee performing printing and copying services for two school districts) became a member of a different bargaining unit (union), to wit: "BOCES Support Services Association”.
The petitioner’s second contention that the time limits imposed under Education Law § 1950 (4) (d) should not be considered as critical or compelling in relation to continuing printing services—as opposed to summer programs and services—is without merit. This court holds and determines that the finely calibrated timing scheme created in the statutory framework applies to all types of shared services equally.
CONCLUSION
This court holds and determines that the petition herein should be and the same is hereby dismissed and the relief requested therein is in all respects denied. PERB’s decision was not arbitrary or capricious, or an abuse of discretion, or affected by an error of law. The District’s alternative arguments were not reached or considered.