OPINION OF THE COURT
Wesley, J.
In Matter of Webster Cent. School Dist. v Public Empl. Relations Bd. (75 NY2d 619), this Court determined that Education Law § 1950 (4) (bb) permits school districts to substitute participation in a Board of Cooperative Educational Services (BOCES) summer school program for its own program without undertaking collective bargaining with their teachers’ unions. We are now called upon to determine whether another portion of the same statute, Education Law § 1950 (4) (d), similarly authorizes a school district to subcontract out its printing services to a BOCES without collective bargaining. We hold that it does.
In September 1995, the Vestal Central School District subcontracted its printing services to the Broome-Tioga *412 BOCES. The contract affected a single District employee, who consented to the transfer and continues to perform printing duties in the same shop using the same machines. Now, however, he performs printing services for two school districts instead of one. Upon transfer, the employee became a member of a new bargaining unit, the BOCES Support Services Association, which negotiated the terms and conditions of his employment.
The Vestal Employees Association subsequently filed an improper practice charge with the Public Employment Relations Board (PERB). The Administrative Law Judge (ALJ) held that the District committed an improper practice by unilaterally subcontracting out printing services performed exclusively by a bargaining unit employee (30 PERB 4514). The ALJ determined that printing services were not covered by Education Law § 1950 (4) (d) and thus did not fall within the exception to mandatory collective bargaining embodied in the statute as interpreted by this Court in Matter of Webster Cent. School Dist. v Public Empl. Relations Bd. (supra, 75 NY2d 619).
On appeal, PERB reversed and dismissed the improper practice charge (30 PERB 3029). PERB determined that Education Law § 1950 (4) (d) applied to contracts for shared noninstructional services and noted that the Commissioner of Education’s approval of the agreement “necessarily represents the Commissioner’s opinion that the printing services in issue in this case fall within the ‘other services’ ” category of Education Law § 1950 (4) (d) (id., at 3071).
The Employees Association then commenced this CPLR article 78 proceeding to challenge PERB’s determination. Supreme Court upheld PERB’s decision and dismissed the petition. The Appellate Division reversed, annulled PERB’s determination and remitted the matter for further proceedings (260 AD2d 699). The Court concluded that the broad scope of the Commissioner’s authority to approve cooperative services contracts could not overcome the Taylor Law’s mandate for public sector employment collective bargaining (260 AD2d, at 703). The Court reasoned that Webster was distinguishable because it relied on a comprehensive statutory scheme that included factors not present here (id., at 704-705). We now reverse and dismiss the petition.
Analysis
In order to resolve this case, we must first examine whether “printing” falls within the scope of Education Law § 1950 (4) *413 (d) (1). If it does, we must then look at the statutory scheme, as we did in Webster, to determine if it reflects a legislative intent that a school district’s decision to subcontract printing services is not subject to mandatory collective bargaining.
Education Law § 1950 (4) (d) gives BOCES districts the authority to provide certain services on a cooperative basis. The statute states in part:
“4. The board of cooperative educational services shall have the power and duty to:
“d. (1) Aidable Shared Services. At the request of component school districts, and with the approval of the commissioner, provide any of the following services on a cooperative basis: school nurse teacher, attendance supervisor, supervisor of teachers, dental hygienist, psychologist, teachers of art, music, physical education, career education subjects, guidance counsellors, operation of special classes for students with disabilities, as such term is defined in article eighty-nine of this chapter; pupil and financial accounting service by means of mechanical equipment; maintenance and operation of cafeteria or restaurant service for the use of pupils and teachers while at school, and such other services as the commissioner may approve” (emphasis added).
It is evident from the statute that the Legislature did not intend to limit the “aidable shared services” to those enumerated in the statute (Education Law § 1950 [4] [d] [1]). The Legislature delegated responsibility to the Commissioner to identify the types of services that can be shared by school districts for the benefit of students.
Contrary to the ALJ and the Appellate Division, we do not read the services currently listed in Education Law § 1950 (4) (d) (1) to restrict “such other services as the commissioner may approve” to those that are “educational” or “nurturing” (Matter of Vestal Empls. Assn. v Public Empl. Relations Bd., 260 AD2d 699, 703, supra). Education Law § 1950 (4) (d) (1) expressly includes “pupil and financial accounting service by means of mechanical equipment.” By no means can those services be deemed educational or nurturing.
The common element among the listed services is that they promote the underlying purpose of BOCES: to provide added *414 services in order to make “it possible for districts to provide a variety of services which they could not individually afford” (Mem of Counsel to State Educ Dept to Committee on Public Education, Bill Jacket, L 1957, ch 1031; see also, Matter of Webster Cent. School Dist. v Public Empl. Relations Bd., supra, 75 NY2d, at 624). Printing promotes the interests the BOCES statute serves. Printing and reproducing materials for instructional use enhances the educational opportunities for the students of both districts.
Moreover, nothing in the legislative history suggests that specific services were listed in Education Law § 1950 (4) (d) (1) to limit the Commissioner’s authority to approve cooperative services. When the Legislature sought to add special classes for physically and mentally disabled children as well as psychologist services to the list, counsel to the State Education Department noted:
“Boards of cooperative services are authorized to provide the specific enumerated services and such other services as the Commissioner of Education might approve. The services specifically stated in the bill have been provided in the past by boards of cooperative services pursuant to the approval of the Commissioner. However, it has apparently been felt that placing these services among those specifically enumerated in the statute will be helpful in furthering services to handicapped children” (Mem of Counsel to State Educ Dept for Governor, Bill Jacket, L 1958, ch 539, reprinted in 1958 NY Legis Ann, at 151 [emphasis added]).
The Commissioner’s discretion, however, is not without statutory limits. In 1996, the Legislature circumscribed the Commissioner’s ability to approve services by listing certain activities which “the commissioner shall not be authorized to approve as an aidable shared service” (Education Law § 1950 [4] [d] [2], as added by L 1996, ch 474, § 16).* Given that printing does not fall within the list of prohibited services, and is a type of service which would promote the policy behind the BO-CES statute, we conclude that printing falls within Education Law § 1950 (4) (d) (1) as a service the Commissioner may approve to be offered on a cooperative basis by BOCES.
*415 We now turn to the second step of our analysis: does the statutory scheme express an intent that a school district’s decision to subcontract printing services be exempt from collective bargaining? We conclude that it does.
We were faced with a similar task in Matter of Webster Cent. School Dist. v Public Empl. Relations Bd. (supra, 75 NY2d 619). In Webster, we examined Education Law § 1950 (4) (bb), which permits a BOCES to provide summer school programs on a cooperative basis, in juxtaposition to the Taylor Law (Civil Service Law § 200 et seq.). We observed in Webster that the BOCES statute neither explicitly mandated nor prohibited collective bargaining (id., at 627). We reviewed the entire statutory scheme for other indications of legislative intent, taking into account the “finely calibrated” timetable as prescribed by Education Law § 1950 within which school districts and the Commissioner must decide to secure BOCES services (id., at 627-628).
As we recognized in Webster, the annual procedure in Education Law § 1950 (4) (d) for securing BOCES services begins “with requests by component school districts, followed by various layers of approvals, and [culminates] in the districts’ final election to contract with BOCES — all to be accomplished between January 15 and April 1, for school year programs beginning in September” (id., at 627). This timetable was designed to “allow more adequate planning for annual school district operations and more time for planning district budgets by affording the Commissioner additional time to approve proposed BOCES programs” (Mem of State Educ Dept in Support, Bill Jacket, L 1975, ch 793, reprinted in 1975, NY Legis Ann, at 149-150).
In addition, Education Law § 1950 (4) (bb) incorporated the job protection provisions of Education Law § 3014-a (75 NY2d, at 628). Thus, we concluded that given “this statutory scheme, we are satisfied that the Legislature’s deliberate incorporation of section 3014-a governing teachers’ rights in the event of a BOCES takeover manifested an intention to establish, within the Education Law, a comprehensive package for a school district’s decision to contract for a BOCES program, and thus to withdraw that decision from the mandatory negotiating process” (id.).
Unlike in Webster, Education Law § 1950 (4) (d) does not expressly refer to any job protection provisions for public employees whose jobs are transferred to a BOCES district as a *416 result of a shared services contract. However, in this case, the employee works under a civil service title as an offset duplicating machine operator and has been afforded certain protections upon the transfer of his functions pursuant to Civil Service Law § 70 (2). We need not explore the exact scope of the employee’s rights under Civil Service Law § 70 (2) because his civil service status has not been affected by the transfer and no allegation has been made to the contrary.
As we stated in Webster, while “legislative expression is the best evidence of legislative intent, it is not the only evidence; legislative intent may also be implied from the words of an enactment” (75 NY2d, at 627). Through a recent amendment to Education Law § 3014-a, the Legislature specifically noted that a program takeover by BOCES pursuant to Education Law § 3014-a is considered a transfer pursuant to Civil Service Law § 70, recognizing that “school personnel beyond teachers are affected by the transfer of programs to and from school districts and BOCES” (see, Education Law § 3014-a [5]; Assembly Mem in Support, Bill Jacket, L 1998, ch 511, reprinted in 1998 McKinney’s Session Laws of NY, at 1917). Thus, while Civil Service Law § 70 is not expressly cross-referenced in Education Law § 1950 (4) (d), the protections it affords are noted in the statutory scheme of the Education Law that deals with a program takeover by BOCES. The broad recognition that BOCES program takeovers are to be considered transfers under Civil Service Law § 70 implies that any action taken by BOCES pursuant to Education Law § 1950 will not be subject to collective bargaining.
The timetable provisions of Education Law § 1950 (4) (d) further support the conclusion that the Legislature did not intend that the school district’s decision to contract out printing services to BOCES be collectively bargained. Although the timetable within Education Law § 1950 (4) (d) was not the only factor in our analysis of Education Law § 1950 (4) (bb) in Webster, it was, nevertheless, a significant one. PERB has taken note of the importance of the time limitations within the statutory scheme and has made Education Law § 1950 (4) (d) a vital part of its resolution of cases involving services transferred to BOCES (see, e.g., Matter of Bellmore Faculty Org., 32 PERB H 4516 [failure to meet statutory time lines for securing services brought matter outside protections of Webster]; Matter of Marcus Whitman Teachers’ Assn., 27 PERB jf 4508 [school district’s transfer of instructional work to BOCES was not subject of mandatory negotiations even though not all teachers enjoy statutory job protection under Education Law § 3014-a]).
*417 In this case, the timetable is even more compressed than in Webster {see, 75 NY2d, at 627). Under the current statutory-scheme, Education Law § 1950 (4) (d) requires school districts to file requests for services by February 1 each year, and the BOCES must submit its proposed annual operating plan for the ensuing school year to the Department of Education no later than February 15 (Education Law § 1950 [4] [d] [3]). A BOCES then has until March 10 to notify the school districts concerning the services which have been approved by the Commissioner (Education Law § 1950 [4] [d] [3]).
Since Webster, the Legislature has not altered the statute’s implications with respect to collective bargaining other than to shorten the time within which the Commissioner must approve a district’s decision to subcontract services and to extend BOCES takeover job protections to nonteaching personnel.
Under this legislative scheme, which grants the Commissioner the discretion to approve aidable shared services, which provides broad protections for public employees other than teachers, and which incorporates tight time considerations, the intent is plain and clear that a school district’s decision to subcontract printing services to BOCES is not subject to mandatory collective bargaining (see, Matter of Webster Cent. School Dist. v Public Empl. Relations Bd., supra, 75 NY2d, at 628).
The parties’ remaining contentions are without merit.
Accordingly, the Appellate Division order should be reversed, with costs, and the petition dismissed.
Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Rosenblatt concur.
Order reversed, etc.

 Those services include, but are not limited to, “lawn mowing services and heating, ventilation or air conditioning repair or maintenance or trash collection, or any other municipal services as defined by the commissioner” (Education Law § 1950 [4] [d] [2]).