[57 NYS3d 551]

In the Matter of LAWRENCE TEACHERS' ASSOCIATION, NYSUT, AFT, NEA, AFL-CIO, Respondent, v NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent, and LAWRENCE UNION FREE SCHOOL DISTRICT, Appellant.

Third Department, June 15, 2017

**APPEARANCES OF COUNSEL**

*Morgan, Lewis & Bockius, LLP*, Washington, D.C. (*Bryan M. Killian* of counsel, admitted pro hac vice), for appellant.

*Richard E. Casagrande, New York State United Teachers*, Latham (*Laura H. Delaney* of counsel), for Lawrence Teachers' Association, NYSUT, AFT, NEA, AFL-CIO, respondent.

*David P. Quinn, New York State Public Employment Relations Board*, Albany, for New York State Public Employment Relations Board, respondent.

*Jeffrey Mongelli, New York State School Boards Association, Inc.*, Latham (*Jay Worona* of counsel), for New York State School Boards Association, Inc., amicus curiae.

**OPINION OF THE COURT**

DEVINE, J.

Appeal from a judgment of the Supreme Court (McGrath, J.), entered February 10, 2016 in Albany County, which partially granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Public Employment Relations Board dismissing petitioner's improper practice charge.

Respondent Lawrence Union Free School District (hereinafter the District) implemented a universal prekindergarten program pursuant to Education Law § 3602-e. Program tasks were first performed by employees working in a collective bargaining unit exclusively represented by petitioner but, in 2012, the District unilaterally contracted with an outside eligible agency to staff and operate it. Petitioner filed an improper practice charge with respondent Public Employment Relations Board (hereinafter PERB) alleging a violation of the

Public Employees' Fair Employment Act (see Civil Service Law art 14 [hereinafter the Taylor Law]), namely, that the District did not negotiate in good faith about outsourcing the work (see Civil Service Law §§ 204 [2]; 209-a [1] [d]).

Following a hearing, an Administrative Law Judge concluded that the provisions of Education Law § 3602-e vitiated the District's duty to negotiate in good faith and dismissed the charge. PERB affirmed, prompting petitioner to commence this CPLR article 78 proceeding. Supreme Court annulled PERB's determination and remitted for further proceedings, holding that nothing in Education Law § 3602-e "defeat[ed] the District's bargaining obligations . . . under the Taylor Law." The District now appeals.

The outsourcing of work performed exclusively by represented employees is a mandatory subject of bargaining under the Taylor Law, rendering a failure to bargain an improper employer practice under Civil Service Law § 209-a (1) (d) (see Matter of Manhasset Union Free School Dist. v New York State Pub. Empl. Relations Bd., 61 AD3d 1231, 1232-1233 [2009]; Matter of Romaine v Cuevas, 305 AD2d 968, 969 [2003]). PERB concluded that the outsourcing here was not a mandatory subject of bargaining due to Education Law § 3602-e (5) (d), which authorizes a school district "to enter any contractual or other arrangements necessary to implement" a prekindergarten program plan "[n]otwithstanding any other provision of law." As PERB itself recognizes, the interplay between the Taylor Law and Education Law § 3602-e presents a question of pure "statutory construction [that] is a function for the courts[, and] PERB is accorded no special deference in [its] interpretation of statutes" (Matter of Webster Cent. School Dist. v Public Empl. Relations Bd. of State of N.Y., 75 NY2d 619, 626 [1990]; see Matter of New York City Tr. Auth. v New York State Pub. Empl. Relations Bd., 8 NY3d 226, 231 [2007]). Our review of the statutory landscape nevertheless leads us to agree with PERB's interpretation.

The main goal in statutory construction is to discern the will of the Legislature and, "[a]s the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]; see Matter of Level 3 Communications, LLC v Clinton County, 144 AD3d 115, 117-118 [2016]). Education Law § 3602-e addresses the apportion-

ment of state funds to school districts that create a universal prekindergarten program plan, "defined as a plan 'designed to effectively serve eligible children directly through the school district or through collaborative efforts between the school district and an eligible agency or agencies' " (*Matter of Board of Educ. of the Catskill Cent. Sch. Dist. [Catskill Teachers Assn.]*, 130 AD3d 1287, 1288-1289 [2015] [emphasis omitted], *lv denied* 26 NY3d 912 [2015], quoting Education Law § 3602-e [1] [d]). A school district is free to avoid collaborative efforts in crafting a prekindergarten program plan (*see* Education Law § 3602-e [1] [d]; *Matter of Board of Educ. of the Catskill Cent. Sch. Dist. [Catskill Teachers Assn.]*, 130 AD3d at 1289), although collaboration is generally required in order for the plan to obtain approval and grant money from the Commissioner of Education (*see* Education Law § 3602-e [2], [5] [e]; [9] [b]; 8 NYCRR 151-1.4 [c]; 151-1.5 [b] [7]). Regardless of the precise plan devised, however, a school district is empowered to "enter any contractual or other arrangements necessary to implement" it "[n]otwithstanding any other provision of law" (Education Law § 3602-e [5] [d]).

The power to contract conferred by Education Law § 3602-e (5) (d) does not "overcome the strong [s]tate policy favoring the bargaining of terms and conditions of employment" by itself, as "any implied intention that there not be mandatory negotiation must be plain and clear or inescapably implicit in the statute" (*Matter of Webster Cent. School Dist. v Public Empl. Relations Bd. of State of N.Y.*, 75 NY2d at 627 [internal quotation marks and citations omitted]; *see Matter of City of Schenectady v New York State Pub. Empl. Relations Bd.*, 85 NY2d 480, 486 [1995]). Education Law § 3602-e (5) (d) goes further and grants the power to make necessary arrangements "[n]otwithstanding any other provision of law," which is a "verbal formulation frequently employed for legislative directives intended to preempt any other potentially conflicting statute, wherever found in the [s]tate's laws" (*People v Mitchell*, 15 NY3d 93, 97 [2010]; *see Matter of Retired Pub. Empls. Assn., Inc. v Cuomo*, 123 AD3d 92, 95 [2014]; *Matter of Niagara County v Power Auth. of State of N.Y.*, 82 AD3d 1597, 1601 [2011], *lv dismissed and denied* 17 NY3d 838 [2011]). The addition of that language accordingly signals the intent of the Legislature to override any statutory conflicts to the exercise of the school district's contracting power, including the Taylor Law bar to outsourcing work absent bargaining beforehand.

There is nothing unclear in the language of Education Law § 3602-e (5) (d), but the history of the statute points to the same legislative aim. The statute originally mandated that a board of education considering the creation of a universal prekindergarten program empanel an advisory board to study the issue, and that advisory board would include stakeholder representatives such as "teachers employed by the school district as selected by the collective bargaining unit" (Education Law § 3602-e former [3] [a], as added by L 1997, ch 436, § 1, part A, § 58; *see* L 1998, ch 58, § 1, part C, § 34). The advisory board would then conduct a thorough, public review and consider factors such as "the most appropriate and effective manner in which to provide prekindergarten programs which most efficiently utilize the resources of the school district and the community, *including eligible agencies*" (Education Law § 3602-e former [3] [b] [vi] [emphasis added]). Then, if the advisory board deemed a prekindergarten program to be advisable, it would prepare a plan for the board of education to consider within a tight time line (Education Law § 3602-e former [3] [c]; [4]).

The Legislature accordingly created a "comprehensive package for a school district's decision to" fashion a prekindergarten program plan and "withdr[e]w that decision from the mandatory negotiating process," crafting a mechanism for public consultations that included affected collective bargaining units and left little time for traditional collective bargaining (*Matter of Webster Cent. School Dist. v Public Empl. Relations Bd. of State of N.Y.*, 75 NY2d at 628; *see Matter of Vestal Empls. Assn., NEA/NY, NEA v Public Empl. Relations Bd. of State of N.Y.*, 94 NY2d 409, 416-417 [2000]). A school district was empowered by Education Law § 3602-e (5) (d) to contract without interference in implementing a plan crafted after that process, and the Legislature did not see fit to revoke that power when it repealed the advisory board mechanism in 2007 (*see* L 2007, ch 57, § 1, part B, § 19).*

In closing, "[t]here is no absolute bar to collective bargaining over" the outsourcing of prekindergarten work to an outside

---

* Instead of the underlying plan being crafted by local stakeholders, a prekindergarten program plan must now be crafted by the school district and satisfy the "uniform quality standards" established by the Commissioner of Education in the wake of the 2007 amendments (NY Reg, Jan. 2, 2008 at 12-13, available at http://docs.dos.ny.gov/info/register/2008/jan2/pdfs/rules.pdf [last accessed June 8, 2017]; *see* Education Law § 3602-e [5]; 8 NYCRR 151-1.4).

agency (*Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.*, 75 NY2d 660, 670 [1990]) and, as we have held, an agreement reached after collective bargaining on the subject is enforceable (*see Matter of Board of Educ. of the Catskill Cent. Sch. Dist. [Catskill Teachers Assn.]*, 130 AD3d at 1288-1290). Inasmuch as the clear language of Education Law § 3602-e compels the conclusion that negotiation is not required to begin with, however, PERB was right to determine that the absence of negotiation did not constitute an improper practice under the Taylor Law. This does not preclude petitioner from seeking impact negotiations in the future.

PETERS, P.J., McCARTHY, EGAN JR. and MULVEY, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as annulled a determination by respondent Public Employment Relations Board and remitted the matter for a new hearing; determination confirmed and petition dismissed; and, as so modified, affirmed.