[59 NYS3d 518]

In the Matter of MENTAL HYGIENE LEGAL SERVICE et al., Appellants, v ANNE MARIE T. SULLIVAN, as Commissioner of Mental Health, et al., Respondents.

Third Department, July 13, 2017

**APPEARANCES OF COUNSEL**

*Sheila E. Shea, Mental Hygiene Legal Service,* Albany (*Shannon Stockwell* of counsel), for appellants.

*Eric T. Schneiderman, Attorney General,* Albany (*Kathleen M. Treasure* of counsel), for respondents.

**OPINION OF THE COURT**

Devine, J.

Appeal from a judgment of the Supreme Court (Farley, J.),

entered September 29, 2016 in St. Lawrence County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of the St. Lawrence Psychiatric Center finding that petitioner Mental Hygiene Legal Service was not statutorily entitled to be present at petitioner D.J.'s treatment planning meetings.

Having been adjudicated "a dangerous sex offender requiring confinement" (Mental Hygiene Law § 10.10 [a]), petitioner D.J. was committed to the St. Lawrence Psychiatric Center and enrolled in the Sex Offender Treatment Program. Respondent Commissioner of Mental Health is required to "develop and implement a treatment plan" for D.J. and others in his position (Mental Hygiene Law § 10.10 [b]; see Mental Hygiene Law § 29.13 [a]) and, "[i]n causing such a plan to be prepared or . . . revised," the patient and specified individuals must be "interviewed and provided an opportunity to actively participate" (Mental Hygiene Law § 29.13 [b]).

In 2016, D.J. asked that his counsel in the Mental Hygiene Law article 10 proceeding, assigned through petitioner Mental Hygiene Legal Service (hereinafter MHLS), accompany him to treatment planning meetings. The requests of D.J. and, later, his counsel were denied, with the chief of service for the Sex Offender Treatment Program, Bryan Shea, explaining that counsel was not entitled to attend treatment planning meetings as a matter of law and that counsel's presence would be therapeutically counterproductive. Shea left open the possibility that a MHLS attorney could participate in a patient's treatment planning, but explained that such would be contingent upon the attorney having a "genuine[ ] interest[ ] in the care of the patient" and guaranteeing "that [he or she was] no longer acting in the role of legal representative" and would keep "any information [received] during treatment planning . . . confidential" from MHLS.

Petitioners thereafter commenced this CPLR article 78 proceeding against respondents, arguing that the refusal to allow counsel for MHLS to attend treatment planning meetings was infected by legal error as well as arbitrary and capricious. Following joinder of issue, Supreme Court disagreed and dismissed the petition. Petitioners now appeal.

Mental Hygiene Law § 29.13 requires that a written treatment plan be prepared for a patient such as D.J.; this plan must take into account "any relevant standards, guidelines, and best practices" (Mental Hygiene Law § 10.10 [b]) and

provide "a statement of treatment goals; appropriate programs, treatment or therapies to be undertaken to meet such goals; and a specific timetable for assessment of patient programs as well as for periodic mental and physical reexaminations" (Mental Hygiene Law § 29.13 [b]). Certain individuals "shall be interviewed and provided an opportunity to actively participate" in the preparation or revision of this plan, including any

> "authorized representative of the patient, to include the parent or parents if the patient is a minor, unless such minor [16] years of age or older objects to the participation of the parent or parents and there has been a clinical determination by a physician indicating that the involvement of the parent or parents is not clinically appropriate and such determination is documented in the record" (Mental Hygiene Law § 29.13 [b]).[1]

Likewise, a "significant individual" requested by a patient 16 years of age or older, "including any relative, close friend or individual otherwise concerned with the welfare of the patient, other than an employee of the facility," is entitled to participate (Mental Hygiene Law § 29.13 [b]).

The question to be answered here is whether counsel for D.J. is necessarily an "authorized representative" or a "significant individual" within the meaning of Mental Hygiene Law § 29.13 (b). The statute does not define either term and, since this is an issue of "pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent," we owe no deference to respondents' interpretation (*Matter of Kent v Cuomo*, 124 AD3d 1185, 1186 [2015] [internal quotation marks and citation omitted], *lv denied* 25 NY3d 906 [2015]; *see Matter of Lawrence Teachers' Assn., NYSUT, AFT, NEA, AFL-CIO v New York State Pub. Empl. Relations Bd.*, 152 AD3d 171, 173 [2017]). Our review of the statutory language nevertheless leads us to agree that counsel for a patient does not fall within either category as a matter of law.

■ The statute does not provide a precise definition for "authorized representative" or "significant individual" but, under "the familiar canon of construction of *noscitur a sociis*, we

---

1. It should be noted that Mental Hygiene Law § 29.13 does not define how an individual will "actively participate," leaving open the possibility that the participation could take forms other than attending treatment planning meetings. Nevertheless, we will assume with the parties that attendance at those meetings is required under the statute.

ordinarily interpret the meaning of an ambiguous word [or phrase] in relation to the meanings of adjacent words" (*Matter of Kese Indus. v Roslyn Torah Found.*, 15 NY3d 485, 491 [2010]; *see* McKinney's Cons Laws of NY, Book 1, Statutes § 239 [a]). The only example cited for an "authorized representative" is the parent of a minor patient who, of course, "has a right to consent to medical treatment on [his or her child's] behalf" (*Matter of Storar*, 52 NY2d 363, 380 [1981], *cert denied* 454 US 858 [1981]; *see* Public Health Law § 2504 [2]). The example accordingly suggests that an "authorized representative" is one "authorized" to make treatment decisions on the patient's behalf, which is consistent with the general meaning of the term as a person with "some sort of tangible delegation to act in [another's] shoes" (*Anderson v United States Dept. of Labor*, 422 F3d 1155, 1180 [10th Cir 2005]; *see e.g.* 45 CFR 46.102 [c]; 18 NYCRR 387.1 [e]).

The legislative history confirms this interpretation, revealing that the language was narrowly drafted so that individuals authorized to assist "in drawing up the treatment plan" could attend the planning meetings (Mem of Economic Development Board, Bill Jacket, L 1976, ch 332 at 5). Indeed, the "significant individual" category was later added so that the "[m]any individuals [who] do not have an authorized representative available" could have someone present at treatment planning meetings to advocate for their "needs and preferences" (Letter from St Commn on Quality of Care for Mentally Disabled, May 17, 1993 at 1, Bill Jacket, L 1993, ch 135 at 13).[2] Counsel does not have authority to make these types of decisions on behalf of a client—instead, counsel must maintain a conventional attorney-client relationship with an impaired client so far as possible and then take steps to consult with individuals who have decision-making authority or ensure the appointment of such an individual (*see* Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.14 [a], [b])—and it follows that counsel is not an "authorized representative" for purposes of Mental Hygiene Law § 29.13.

■ Of far more interest is whether counsel for a patient is a "significant individual" within the meaning of Mental Hygiene

---

**2.** The concern that few patients have an "authorized representative" comes close to demonstrating by itself that counsel from MHLS is not such a representative. This is for the simple reason that MHLS "*shall* provide legal assistance to patients or residents" in specified facilities and, as such, serves as a broadly available legal resource rather than one limited to a few patients (Mental Hygiene Law § 47.01 [a] [emphasis added]).

Law § 29.13. Again referring to adjacent terms, we note that "significant individual" is in a statute devoted to securing appropriate mental health treatment and surrounded by references to parents, relatives and friends, strongly suggesting that the phrase refers to someone interested in the patient's welfare and knowledgeable about his or her personal situation rather than someone tasked with providing legal counsel. The legislative history bears these intimations out, describing an individual as "significant" if he or she is "concerned with the welfare of the patient" and able to engage with treatment providers on therapeutic goals, "the needs of the patient and the existence . . . of informal caregivers who may collaborate . . . in appropriate treatment and discharge planning" (Assembly Introducer's Mem in Support, Bill Jacket, L 1993, ch 135 at 6, 1993 NY Legis Ann at 97). The commission whose earlier study sparked the statutory amendments also advocated for their passage and, in so doing, remarked upon "the need for staff to nurture family and informal supports while individuals are hospitalized and . . . help individuals to develop such supports in order to promote a successful return to the community after hospitalization, and when possible, to avoid rehospitalization" (Letter from St Commn on Quality of Care for Mentally Disabled, May 17, 1993 at 1, Bill Jacket, L 1993, ch 135 at 13).[3] While the commission did not describe what it meant by "informal supports," its underlying report refers to consultation with "consumer and family groups, as well as established providers of informal support programs" such as organizations that offer psychiatric rehabilitation and support services for the mentally ill (State Commission on Quality of Care for the Mentally Disabled, Discharge Planning Practices of General Hospitals: Did Incentive Payments Improve Performance? at 71 [Apr. 1993]). The statutory text and the history behind it therefore reveal that a "significant individual" is personally interested in a patient's mental health and welfare and in a position to assist in setting appropriate treatment goals while a patient is hospitalized and ensuring an appropriate placement upon his or her discharge.

---

**3.** With regard to discharge planning, "the director of the facility" is instructed to "assure that [certain] persons are interviewed, provided an opportunity to actively participate in the development of [a written discharge] plan and advised of whatever services might be available to the patient through" MHLS, again suggesting that MHLS is separate from the individuals who are entitled to personally participate in the process (Mental Hygiene Law § 29.15 [f]).

Counsel from MHLS, in contrast, comes from an agency whose "statutory mission is to provide legal assistance to the residents of certain facilities" such as D.J., and legal advocacy may easily conflict with crafting an appropriate treatment plan if the medically advisable treatment conflicts with the client's legal goals (*Matter of Mental Hygiene Legal Serv. v Maul*, 36 AD3d 1133, 1134 [2007], *lv denied* 8 NY3d 812 [2007]; *see* Mental Hygiene Law §§ 10.03 [o]; 47.01 [a]; 47.03). The statutory authority granted to MHLS explicitly recognizes the distinction between the narrow legal concerns of MHLS and the broader ones of those interested in the patient's care, making a point of directing MHLS to inform "*others* interested in [a patient's] welfare" of his or her legal rights (Mental Hygiene Law § 47.03 [b] [emphasis added]) and "[t]o provide legal services and assistance to *patients or residents and their families* related to the admission, retention, and care and treatment of such persons" (Mental Hygiene Law § 47.03 [c] [emphasis added]). Indeed, MHLS as it now exists emerged from 1985 legislation that jettisoned its predecessor's involvement in clinical decisions in favor of an entity that "assume[d] the traditional attorney-client relationship with patients, residents and their families" and left "suitability determinations [for treatment to] the facility director" (Sponsor's Mem, Bill Jacket, L 1985, ch 789 at 8). In other words, embracing the reading of Mental Hygiene Law § 29.13 advocated by petitioners would run directly against MHLS's own limited legislative mandate, and "it is well settled that courts should construe [statutes] to avoid objectionable, unreasonable or absurd consequences" (*Long v State of New York*, 7 NY3d 269, 273 [2006]; *accord Matter of County of Albany v Hudson Riv.-Black Riv. Regulating Dist.*, 97 AD3d 61, 69 [2012], *lv denied* 19 NY3d 816 [2012]). We follow that course here, which compels the conclusion that counsel from MHLS is not necessarily a "significant individual" under Mental Hygiene Law § 29.13.

As a final matter, there is little doubt that counsel for a patient may, in an individual case, have developed the type of personal relationship with his or her client so as to be a "significant individual" within the meaning of Mental Hygiene Law § 29.13. The record is devoid of proof showing that D.J. and his counsel had that type of relationship and, in fact, petitioners maintain on appeal that D.J. "did not have to explain himself . . . before he requested MHLS's assistance." We accordingly leave for another day the questions of what

would render an individual attorney a "significant individual" under the terms of Mental Hygiene Law § 29.13 and, if he or she is, what further limits on his or her treatment plan participation may reasonably be imposed.

GARRY, J. (dissenting). We respectfully dissent. The staff of petitioner Mental Hygiene Legal Service (hereinafter MHLS) is statutorily entitled to attend a resident's treatment planning meeting pursuant to Mental Hygiene Law §§ 29.13 (b); 47.01 (a) and 47.03 (c) and (d), and the denials of petitioners' requests were thus based upon an error of law.

Our objective in matters of statutory interpretation is to ascertain and give effect to the Legislature's intention, and the plain and unambiguous language of a statute is the clearest indicator of legislative intent (*see Matter of Shannon*, 25 NY3d 345, 351 [2015]; *Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities*, 19 NY3d 106, 120 [2012]). Here, the plain language of Mental Hygiene Law §§ 47.01 and 47.03 establishes the broad scope of the duties of MHLS, encompassing the provision of "legal services and assistance" related to a resident's "care and treatment" and permitting MHLS full access to these facilities in carrying out these duties (Mental Hygiene Law §§ 47.01 [a]; 47.03 [c]; *see* Mental Hygiene Law § 47.03 [d]). In harmonizing the statutory sections at issue, we must construe the statute as a whole and "its various sections must be considered together and with reference to each other," and in consideration of the corresponding legislative history (*Matter of Shannon*, 25 NY3d at 351 [internal quotation marks and citations omitted]; *see Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities*, 19 NY3d at 120; *Matter of Talisman Energy USA, Inc. v New York State Dept. of Envtl. Conservation*, 113 AD3d 902, 905 [2014]).

As to Mental Hygiene Law § 29.13, the Legislature expressly stated that its purpose in amending the act in 1993 was for the "inclusion of a friend or *advocate* in treatment . . . planning activities" (L 1993, ch 135 [emphasis added]). Recognizing the inherent vulnerability of residents encompassed by Mental Hygiene Law § 29.13, MHLS properly serves its duties by providing advocacy services concerning a resident's objections to care and treatment (*see generally Rivers v Katz*, 67 NY2d 485, 498-499 [1986]) and concerning whether treatment is provided in accordance with statutory and regulatory standards. It bears noting that treatment decisions may have im-

mediate consequences that cannot be reversed upon a later determination that the treatment was not rendered in compliance with the law (*see e.g. Mental Hygiene Legal Serv. v Cuomo*, 195 AD2d 189, 191 [1994]).

Statutory interpretation further requires that the language of a statute be construed "according to its natural and most obvious sense, without resorting to an artificial or forced construction" (McKinney's Cons Laws of NY, Book 1, Statutes § 94), and ordinary words should "be given their usual and commonly understood meaning" (McKinney's Cons Laws of NY, Book 1, Statutes § 232). Although the majority emphasizes the inclusion of terms related to relatives and friends, Mental Hygiene Law § 29.13 is not so limited, specifying that a "significant individual" includes "any relative, close friend or *individual otherwise concerned with the welfare of the patient*" (Mental Hygiene Law § 29.13 [b] [emphasis added]). Further, although not expressly defined in the statute, a representative is defined as "[s]omeone who stands for or acts on behalf of another" (Black's Law Dictionary [10th ed 2014], representative). In according the language of the statute its plain and ordinary meaning, we agree with petitioners that MHLS counsel serves as a resident's authorized representative and, where identified by the resident as such, an MHLS employee constitutes a significant individual concerned with the resident's welfare.

Moreover, "where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded"* (McKinney's Cons Laws of NY, Book 1, Statutes § 240; *see Eaton v New York City Conciliation & Appeals Bd.*, 56 NY2d 340, 345-346 [1982]; *Matter of Doe v O'Donnell*, 86 AD3d 238, 241 [2011], *lv denied* 17 NY3d 713 [2011]). Here, the statute permits a facility to deny a resident's request for the presence of "an employee of the facility," but no such language exists as to MHLS (Mental Hygiene Law § 29.13 [b]). Had the Legislature intended to also exclude the presence of an employee of MHLS, it could have easily done so.

Finally, as a practical matter, we find it preferable that potential issues of interference be addressed if and when such may arise, rather than proscribing the attendance of an MHLS

---

* For those who enjoy Latin, this is also stated as "expressio unius est exclusio alterius."

representative in every case based upon the mere conjecture that such problems may sometimes arise; put another way, this argument is premature and may be better addressed on a case by case basis. For the reasons above, we would reverse and find that MHLS counsel is statutorily authorized to serve in the capacity of an authorized representative or significant individual concerned with the welfare of a patient and, thus, to attend a resident's treatment planning meeting when the resident so requests.

McCarthy, J.P., and Rose, J., concur with Devine, J.; Garry, J., dissents in a separate opinion in which Lynch, J., concurs.

Ordered that the judgment is affirmed, without costs.