# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 1
In the Matter of Mental Hygiene
Legal Service et al.,
  Appellants,
   v.
Anne Marie T. Sullivan, as
Commissioner of Mental Health,
et al.,
  Respondents.

Shannon Stockwell, for appellants.
Kathleen M. Treasure, for respondents.

STEIN, J.:

On this appeal, we are asked to determine whether Mental Hygiene Law articles 10, 29, and 47 mandate, upon a respondent's request, the presence of assigned Mental Hygiene Legal Service (MHLS) counsel at treatment planning meetings for article 10 respondents

- 1 -

placed in a Sex Offender Treatment Program at a secure treatment facility. We hold that MHLS counsel is not entitled to be given an interview and an opportunity to participate in treatment planning simply by virtue of an attorney-client relationship with an article 10 respondent.

I.

A Mental Hygiene Law article 10 respondent who has been found "to be a dangerous sex offender requiring confinement" must "be committed to a secure treatment facility for care, treatment, and control until such time as [the respondent] no longer requires confinement" (Mental Hygiene Law § 10.07 [f]).[1] The Commissioner of Mental Health is required, among other things, to "develop and implement a treatment plan in accordance with the provisions of section 29.13 of [the Mental Hygiene Law]" for persons so committed (id. § 10.10 [b]). The treatment plan must include "a statement of treatment goals; appropriate programs, treatment or therapies to be undertaken to meet such goals; and a specific timetable for assessment of patient programs as well as for periodic mental and physical reexaminations" (id. § 29.13 [b]). When a treatment plan is prepared or revised, the patient and individuals falling within two specified categories "shall be

_____

[1] A "'[d]angerous sex offender requiring confinement' means a person who is a detained sex offender suffering from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.03 [e]). A "'[s]ecure treatment facility' means a facility . . .[,] includ[ing] a facility located on the grounds of a correctional facility, that is staffed with personnel from the office of mental health or the office for people with developmental disabilities for the purposes of providing care and treatment to persons confined under" Mental Hygiene Law article 10 (id. § 10.03 [o]).

interviewed and provided an opportunity to actively participate in such preparation or revision" – namely, "an authorized representative of the patient, to include the parent or parents if the patient is a minor" and, "upon the request of the patient [16] years of age or older, a significant individual to the patient including any relative, close friend or individual otherwise concerned with the welfare of the patient, other than an employee of the facility" (id.).

Petitioners D.J. – who was committed to a secure treatment facility pursuant to Mental Hygiene Law § 10.07 (f) – and his assigned MHLS counsel separately requested that counsel be permitted to attend D.J.'s periodic treatment planning meetings as either an "authorized representative" or a "significant individual" under Mental Hygiene Law § 29.13 (b). The Chief of Service for the Sex Offender Treatment Program denied the requests on the ground that, because treatment planning is a clinical activity at which residents have no right to legal representation, the Office of Mental Health does not permit an MHLS attorney to participate unless the attorney is able to demonstrate a personal interest in the resident that extends beyond the role of legal advocate, and recuses from legally representing a resident.

Petitioners then commenced this CPLR article 78 proceeding against respondents Commissioner of Mental Health and the Executive Director of the St. Lawrence Psychiatric Center (hereinafter collectively referred to as OMH), challenging the denial of their requests as arbitrary and capricious, and seeking an order requiring that counsel be permitted to participate in treatment planning meetings. Petitioners conceded that the constitutional right to counsel does not attach at treatment planning meetings, but argued

that OMH is required by statute to permit MHLS counsel to attend those meetings, and that OMH's refusal to do so violated D.J.'s statutory right to receive MHLS's "assistance . . . related to [his] care and treatment" (Mental Hygiene Law § 47.03 (c). Supreme Court dismissed the petition, holding that the "Mental Hygiene Law does not grant MHLS staff or its attorneys the right to attend and participate in [section] 29.13 (b) treatment meetings."

The Appellate Division affirmed (153 AD3d 114 [3d Dept 2017]). The Court concluded that "counsel for D.J. is [not] an 'authorized representative' or a 'significant individual' within the meaning of Mental Hygiene Law § 29.13 (b)" (153 AD3d at 117). In reaching that conclusion, the Court reasoned "that an 'authorized representative' is one 'authorized' to make treatment decisions on the patient's behalf," and that the phrase "significant individual" means "someone interested in the patient's welfare and knowledgeable about his or her personal situation rather than someone tasked with providing legal counsel" (id. at 117-119). While the majority held that, in an individual case, an MHLS attorney may "have developed the type of personal relationship with his or her client so as to be a 'significant individual' within the meaning of" the statute, petitioners offered no proof demonstrating the existence of such a relationship here (id. at 120). Two dissenting Justices would have held that MHLS counsel is an "authorized representative" within the meaning of the statute because "a representative is . . . 'someone who stands for or acts on behalf of another,'" in the same way that MHLS counsel serves patients (id. at 122, quoting Black's Law Dictionary [10th ed. 2014], representative). The dissenters further opined that the term "significant individual" is neither limited to relatives and close friends nor requires a showing of a personal relationship with a patient because the term

also includes any "individual otherwise concerned with the welfare of the patient" (id. at 122, quoting Mental Hygiene Law § 29.13 [b]). Thus, the dissenters would have held that all MHLS attorneys are "statutorily entitled to attend . . . resident[s'] treatment planning meeting[s]" (id. at 121).

Petitioners appealed as of right pursuant to CPLR 5601 (a).

## II.

MHLS is a "creature of statute [that] lacks powers not granted to it by express or necessarily implicated legislative delegation" (Matter of Flynn v State Ethics Commn., Dept. of State, State of N.Y., 87 NY2d 199, 202 [1995]). Thus, absent a clear intent in Mental Hygiene Law articles 10, 29, and 47 that MHLS counsel must always be given a role in treatment planning, such a mandate should not be judicially supplied.[2] Contrary to petitioners' primary argument on this appeal, the provisions of Mental Hygiene Law article 47 – which establishes MHLS and sets forth its powers – do not definitively answer the question before us. Mental Hygiene Law § 47.01 (a) charges MHLS with "provid[ing] legal assistance to patients or residents of a facility[,] to persons alleged to be in need of care and treatment in such facilities . . ., and to persons entitled to such legal assistance as provided by [Mental Hygiene Law] article ten" (Mental Hygiene Law § 47.01 [a]). The

---

[2] Our decision should not be read to foreclose the possibility that MHLS counsel could participate in treatment planning, either upon a respondent's request if counsel meets the requirements of the Mental Hygiene Law outlined herein, or in a facility's discretion if the patient lacks the capacity to identify a significant individual. Rather, our decision is limited to answering the question presented here, which is whether MHLS counsel must always be given an interview and an opportunity to participate in treatment planning meetings if a patient so requests.

functions, powers and duties of MHLS are more specifically set forth in section 47.03.

Petitioners focus on subdivision (c) of section 47.03, which requires MHLS

> "[t]o provide legal services and assistance to patients or residents and their families related to the admission, retention, and care and treatment of such persons, . . . and to inform patients or residents, their families and, in proper cases, others interested in the patients' or residents' welfare of the availability of other legal resources which may be of assistance in [other] matters."

While the language of Mental Hygiene Law article 47 supports petitioners' argument that MHLS has broad legal duties, nothing in that article directly addresses the question of whether the legislature intended that MHLS counsel would be entitled, upon a respondent's request, to a role in treatment planning, which is undisputedly a clinical activity.

Turning to Mental Hygiene Law articles 10 and 29, we note that, "[u]nder principles of statutory construction, whenever there is a general and a specific provision in the same statute, the general applies only where the particular enactment is inapplicable" (Matter of Perlbinder Holdings, LLC v Srinivasan, 27 NY3d 1, 9 [2016], citing McKinney's Cons Laws of NY, Book 1, Statutes § 238).  The specific provision applicable here is Mental Hygiene Law § 29.13 (b) inasmuch as it expressly addresses who must be allowed to participate in treatment planning.  We are asked to consider whether MHLS counsel falls within the scope of individuals who must, upon the request of the respondent, be "interviewed and provided an opportunity to actively participate" under that provision as it applies to Mental Hygiene Law article 10 respondents, in particular.

Mental Hygiene Law article 10 sets forth the legal services and assistance to which respondents such as D.J. are entitled.  It directly references MHLS when the legislature

envisioned a role for that agency in representing indigent respondents in particular proceedings (see Mental Hygiene Law §§ 10.06 [c] [counsel is appointed upon the filing of a civil management petition where the respondent is indigent, and the court is expressly directed to appoint MHLS "if possible"]; 10.11 [d] [3] [MHLS is required to represent indigent respondents in strict and intensive supervision and treatment (SIST) revocation proceedings]; 10.13 [c] [the court must appoint MHLS, if possible, "[i]n connection with any appeal" taken under article 10]). Section 10.10 (b), which is the only provision in article 10 that references section 29.13, does not provide that MHLS is to have any role in connection with the development of a treatment plan, or mention any role for counsel at all. As relevant here, that section requires only that the Commissioner of Mental Health "develop and implement a treatment plan in accordance with the provisions of section 29.13" (Mental Hygiene Law § 10.10 [b]). Of course, "the text of a provision is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning" (Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106, 120 [2012] [internal quotation marks and citation omitted]). Given the legislature's practice of referencing MHLS by name when it intends the agency to play a role in a particular activity, that section 10.10 (b) does not mention MHLS is, in itself, a strong indication that the Legislature did not intend MHLS counsel to be automatically entitled to a role in the clinical activity of treatment planning (see Matter of Corrigan v New York State Off. of Children & Family Servs., 28 NY3d 636, 642 [2017] ["the failure of the Legislature to include a substantive, significant prescription

in a statute is a strong indication that its exclusion was intended" (internal quotation marks

and citations omitted)]).

That intent is confirmed when Mental Hygiene Law article 10 is read in conjunction

with article 29. Section 29.13 (b) provides that,

> "[i]n causing . . . a [written treatment] plan to be prepared or
> when such a plan is to be revised, the following persons shall
> be interviewed and provided an opportunity to actively
> participate in such preparation or revision: the patient; an
> authorized representative of the patient, to include the parent
> or parents if the patient is a minor [;]. . . [and,] upon the request
> of the patient [16] years of age or older, a significant individual
> to the patient including any relative, close friend or individual
> otherwise concerned with the welfare of the patient, other than
> an employee of the facility."

The statute requires that, apart from the patient, only two other categories of individuals

must be given an interview and opportunity to participate in treatment planning – "an

authorized representative of the patient" and, upon the patient's request, "a significant

individual to the patient." The question before us is whether MHLS counsel falls within

the meaning of the terms "authorized representative" and "significant individual." In that

regard, we note that, although section 29.13 (b) neither mentions any role for MHLS nor

mandates that MHLS counsel be given an opportunity to participate in treatment planning

for article 10 respondents, the legislature took care to mention other individuals or

categories of persons, specifically naming employees of the facility.

"[I]t is well settled that a statute must be construed as a whole and that its various

sections must be considered with reference to one another" (Matter of Albany Law School,

19 NY3d at 120). Indeed, it is a bedrock rule of statutory construction that, "where the

same word or phrase is used in different parts of a statute[,] it will be presumed to be used in the same sense throughout," absent any indication of a contrary intent (Catlin v Sobol, 77 NY2d 552, 559 [1991]; see McKinney's Cons. Laws of N.Y., Book 1, Statutes § 236, at 401–402).  Therefore, we must read the language of section 29.13 (b) together with the relevant language of subdivision (f) of section 29.15, which is the very next section in the Mental Hygiene Law and also uses the terms at issue in this case: "authorized representative" and "significant individual." Section 29.15 (f) relates to the discharge and conditional release of patients.   It distinguishes MHLS from both "authorized representatives" and "significant individuals," providing that

> "[i]n causing [a discharge] plan to be prepared, the director of the facility shall take steps to assure that the following persons are interviewed, provided an opportunity to actively participate in the development of such plan and advised of whatever services might be available to the patient through [MHLS]: the patient to be discharged or conditionally released; an authorized representative of the patient, to include the parent or parents if the patient is a minor . . .; and upon the request of the patient [16] years of age or older, a significant individual to the patient including any relative, close friend or individual otherwise concerned with the welfare of the patient, other than an employee of the facility."

If the terms "authorized representative" or "significant individual" were intended to require inclusion of MHLS counsel, there would be no need to impose on facilities the duty of advising those individuals of the services that MHLS provides.  Reading section 29.13 (b) together with section 29.15 (f), as we must, leads us to conclude that MHLS counsel is not one of the categories of individuals automatically entitled to be given an interview and

opportunity to participate in treatment planning, even upon request of an article 10 respondent.

The legislative history of section 29.13 (b) further supports our conclusion that the terms "authorized representative" and "significant individual" cannot be read as an "express or necessarily implicated delegation" to MHLS counsel of authority to participate in treatment planning in every case in which an article 10 respondent asks them to do so (Flynn, 87 NY2d at 202). Part of the rationale for adding language to the statute in 1993 to allow "significant individuals," in addition to "authorized representatives," to participate was that "[m]any individuals [did] not have an authorized representative" to assist them in the treatment "planning process" (Letter of Assistant Counsel, State Commission on Quality of Care for the Mentally Disabled, Bill Jacket, L 1993, ch 135, at 13). However, if MHLS counsel was considered an authorized representative for purposes of treatment planning simply by virtue of the attorney-client relationship, the amendment would have been unnecessary because every patient would already have had an authorized representative available.

Petitioners argue, and the dissent agrees, that MHLS counsel comes within the meaning of the statutory phrase "significant individual to the patient, including any . . . individual otherwise concerned with the welfare of the patient" (Mental Hygiene Law § 29.13 [b]), because the purpose of the 1993 amendment was to "allow a patient in a facility to have a friend or advocate of his or her choice to be present at the meeting when facility staff develop the treatment or discharge plan" (Sponsor's Mem, Bill Jacket, L 1993, ch 135, at 6 [emphasis added]), and MHLS provides "advocacy" services. However, the

language on which petitioners rely is cherry-picked from the Sponsor's Memorandum in support of the bill, which also states that the amendment arose out of a study "suggest[ing] that there is a need for facility staff to be attentive in nurturing and developing informal supports for individuals while they are hospitalized in order to promote the delay or avoidance of the need for rehospitalization" (id.). The Sponsor's Memorandum explains that, "[o]ften, individuals receiving services do not have an available family member who can participate," and that "[t]his bill will promote the inclusion of <u>significant others</u> in the planning process" (id. [emphasis added]). The legislative history makes clear that the term "significant individual" refers to family, friends, significant others and similar individuals who have a personal relationship with a patient that would enable such individuals to act as a patient advocate during the clinical activity of treatment planning, rather than counsel providing legal advocacy as part of a traditional attorney-client relationship.[3]

In short, the statutory language of Mental Hygiene Law §§ 10.10 (b) and 29.13 (b), as well as the relevant legislative history, support the conclusion that MHLS counsel was not intended to be included, as a matter of law, within the terms "authorized representative" or "significant individual." Thus, OMH is not <u>required</u>, upon the respondent's request, to provide an interview and an opportunity to participate in treatment planning to MHLS

---

[3] That section 29.13 (b) limits the term "significant individual" by providing that a facility must deny a resident's request for the presence of an "employee of the facility," but not MHLS, does not mean that MHLS counsel must be allowed to attend. Rather, that language, by its terms, simply renders employees ineligible to attend treatment planning meetings even if they would otherwise qualify as "significant individuals." We do not address whether an MHLS employee who is not a lawyer and otherwise qualifies under the statute would fall within the section in an appropriate case.

counsel who has only a professional, attorney-client relationship with an article 10 respondent.  However, as OMH concedes, a facility has the discretion to permit MHLS counsel to participate in treatment planning and, in a particular case, it is possible that counsel could develop and demonstrate a sufficient personal relationship with a patient such that counsel would qualify as a "significant individual . . . otherwise concerned with the welfare of the patient," entitled to participate therein.   Contrary to the conclusion of the dissent, no such showing was even attempted in this case.  Rather, petitioners asserted only that D.J. designated his MHLS attorney as a significant individual and that should be sufficient. Therefore, we need not decide the circumstances under which it would be arbitrary and capricious for a facility to determine that an individual MHLS attorney is not a "significant individual . . . concerned with the welfare of the patient" (Mental Hygiene Law § 29.13 [b]) or whether such a person would then be required to recuse from acting in the role of legal representative for an article 10 respondent.

Accordingly, the order of the Appellate Division should be affirmed, without costs.

Matter of MHLS v Sullivan

No. 1

WILSON, J. (dissenting):

I agree with the majority that "MHLS counsel does not, simply by virtue of an attorney-client relationship with an article 10 respondent, qualify as an individual required to be given an interview and an opportunity to participate in treatment planning" (majority

- 1 -

op. at 1-2).  Although the majority acknowledges that "D.J. — who was committed to a

secure treatment facility — and his assigned counsel separately requested that counsel be

permitted to attend D.J.'s periodic treatment planning meetings as either an 'authorized

representative' or a 'significant individual'," the majority disregards Section 29.13(b)'s

clearly granted right to confined sex offenders: they may designate, as a "significant

individual," anyone other than an employee of the secure treatment facility.  The majority

voids D.J.'s designation simply because Mr. Bliss is his MHLS attorney.  There is no basis

in the statute or record for that result.  D.J.'s designation, and the Legislature's command,

should be honored.

## I.

The Legislature could not have more clearly stated the right of a sex offender

committed to a secure treatment facility to designate a person of his or her choosing as the

patient's "significant individual".  Mental Hygiene Law § 29.13(b) provides:

> In causing such a [written treatment] plan to be prepared or when a plan is to be
> revised, the following persons **shall be interviewed and provided an opportunity
> to actively participate** in such preparation or revision: the patient; an authorized
> representative of the patient, to include the parent or parents if the patient is a minor,
> unless such minor sixteen years of age or older objects to the participation of the
> parent or parents and there has been a clinical determination by a physician
> indicating that the involvement of the parent or parents is not clinically appropriate
> and such determination is documented in the record; **upon the request of the
> patient sixteen years of age or older, a significant individual to the patient
> including any relative, close friend or individual otherwise concerned with the
> welfare of the patient, other than an employee of the facility**.

(emphasis added).  D.J. is over 16; he requested that Matthew Bliss be designated his

"significant individual"; Mr. Bliss has stated his willingness to serve in that role; there is

no evidence that Mr. Bliss is cavalier about D.J.'s welfare; and Mr. Bliss is not an employee of the facility. The statutory command that Mr. Bliss "shall be interviewed and provided an opportunity to actively participate" is patent. The majority's repeated statements that it will not "judicially suppl[y]" a "mandate" that "MHLS counsel must always be given a role in treatment planning" (majority op. at 5); that "section 29.13 (b) neither mentions any role for MHLS nor mandates that MHLS counsel be given an opportunity to participate in treatment planning" (majority op. at 8); or that the statute does not "require inclusion of MHLS counsel" (majority op. at 9) are all off point. MHLS has no statutory right to participate in patient treatment planning. Patients, however, have a right to designate any significant individual who is not employed by the treatment facility.

The text of MHL § 29.13(b) could not be clearer. The straightforward reading of a statute governs its construction unless the result would be absurd or irreconcilable with another statutory provision. Yet the majority abjures the legislature's plain command, as well as our own bedrock rule of statutory construction (see Matter of Lisa T. v King E.T., 30 NY3d 548, 552 [2017] ["It is fundamental that, because the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (citations and quotations omitted)]; see also Matter of T-Mobile Northeast, LLC v DeBellis, ___NY3d___, 2018 NY Slip Op 08539, *4 [2018]["We begin with the plain language of the statute, which is the clearest indicator of legislative intent"]; People v Pabon, 28 NY3d 147, 152 [2016] ["when the statutory language is clear and unambiguous, it should be

construed so as to give effect to the plain meaning of the words used"]; <u>Makinen v City of</u> <u>NY</u>, 30 NY3d 81, 85 [2017] ["Inasmuch as the text of a statute is the clearest indicator of such legislative intent, where the disputed language is unambiguous, we are bound to give effect to its plain meaning. Moreover, where, as here, the legislative language is clear, we have no occasion to examine extrinsic evidence to discover legislative intent" (citations and quotations omitted)]; <u>Matter of NY Civ. Liberties Union v NY City Police Dept.</u>, ___NY3d___, 2018 NY Slip Op 08423, *5 [2018] ["We are not at liberty to second-guess the Legislature's determination, or to disregard—or rewrite—its statutory text"]; <u>Matter of</u> <u>Brookford, LLC v NY State Div. of Hous. & Community Renewal</u>, 31 NY3d 679, 690 [2018] ["We start with the text because it is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning" (quotations and citation omitted)].

The question, then, is whether some other portion of the statute's text limits the patient's discretion to designate an MHLS attorney as a "significant individual." None does. As examples of a "significant individual" the statute lists "any relative, close friend or individual otherwise concerned with the welfare of the patient." The statute presents these as a non-exclusive list, but even if we pretend the list is exhaustive, the words are capacious. "Any relative" would extend to third cousins once removed and beyond. Who is to determine who is a "close friend" of the patient, other than the patient? Finally, "other individual concerned with the welfare of the patient" must be read to exclude all relatives and close friends, else that phrase would be meaningless. Who would ever have any

interest in participating in a dangerous sex offender's treatment planning meetings without also having concern for that offender's general welfare?  Even the broad title of "significant individual" itself suggests the statute is meant to include people who are significant *to the patient*.  The statutory language makes the patient's request paramount.

Were there any doubt about the language's meaning, it should be quieted by the legislative precision in crafting section 29.13(b).  The Legislature set out detailed specifications for when a parent must be included, an age threshold after which a minor could exclude parents, provided that specific medical findings had been made and were placed on the record.  As to who may be a "significant individual," the Legislature expressly included an exception to the patient's designation right:  an "employee of the facility" may not be chosen as a significant individual. "Where the legislature has addressed a subject and provided specific exceptions to a general rule—as it has done here—the maxim *exclusio unius est exclusio alterius* applies" (Kimmel v State of NY, 29 NY3d 386, 394 [2017]).  That glaring deficiency in the majority's interpretation is relegated to a footnote whose conclusion is to reject, once again, the argument that "MHLS counsel must be allowed to attend."  The Legislature commanded that patients could not designate a facility employee as a "significant individual."  It made no such judgment as to MHLS lawyers, whose existence and functions were indisputably known to the Legislature.

Likewise, the majority's citations to other portions of the Mental Hygiene Law address the question of whether MHLS attorneys would have a right to attend treatment

planning meetings when no patient has designated an MHLS attorney as a "significant individual," but have no bearing on the effect of that designation when made. Thus, as the majority writes, other parts of the Mental Hygiene Law do specifically refer to MHLS (majority op. at 8). But the only negative inference that can be drawn from the inclusion of MHLS in 29.15 and not in 29.13 is that the Legislature did not envision that MHLS attorneys would always and automatically be included in treatment planning meetings. I agree, but that provides no evidence that the Legislature meant to bar patients from choosing an MHLS attorney as the patient's "significant individual."

II.

The statutory language is so plain that I am loathe even to mention the legislative history. That history, though, adds an exclamation point to the majority's error. The Bill Jacket contains a letter from the Commission on Quality of Care to the Governor's Counsel, Elizabeth Moore. That letter explains "this proposal was based on a 1993 report of the Commission" which found that many mental health providers did not afford patients a "meaningful role in the development of their treatment plans" or include families in discharge planning (Letter from Paul F. Stavis, Bill Jacket L 1993 ch 185 at 17). As authors of the report that led to the bill, the Commission's views furnish a strong source of the bill's purposes. The Bill Jacket contains a memorandum prepared by the Commission that explains the language regarding a "significant individual" was written to extend beyond family members because "[o]ften, individuals receiving services do not have an available

family member who can participate" (Commission on Quality of Care Memorandum, Bill Jacket 1993 Ch 135 at 6).

The same memorandum provides useful context in understanding the Legislature's expectation for the role of a significant individual in the planning process. The memorandum explains, in summarizing the law's purpose:

> The inclusion of a family member or other significant individual *or advocate* concerned with the welfare of the patient in the planning process for the individual will provide important information and assistance to the facility in regards to the needs of the patient and the existence, if any, of informal caregivers who may collaborate with the facility and support the individual in appropriate treatment and discharge planning.

(Commission on Quality of Care Memorandum, Bill Jacket 1993 Ch 135 at 6 [emphasis added]). The word "advocate" appears repeatedly in the submissions from the Commission. In a letter to Assemblywoman Destito, the Commission explained the purpose of the bill was to "authorize the patient to designate a significant individual to assist *and advocate* on his or her behalf in the planning process" (Letter to Assemblywoman Destito, Bill Jacket 1993 Ch 135 at 13 [emphasis added]). The language is picked up elsewhere by the deputy counsel for the New York State Office of Mental Retardation and Developmental Disabilities, who writes that the agency made no recommendation "in relation to the inclusion of a friend *or advocate* in treatment and discharge planning activities" (Letter from Alan Adler, Bill Jacket 1993 Ch 135 at 11 [emphasis added]).

This vision of how a "significant individual" would take part in the process must counsel strongly against the view expressed by the majority, that MHLS attorneys' "traditional attorney-client relationship" precludes their participation in treatment planning

(majority op. at 11). Indeed, there are few words as closely tied to lawyers as the word "advocate." In fact, the Latin word for lawyer is advocatus; in French, "avocat"; in Italian, "avvocato"; in Spanish, "abogado"; Czech, "advokat"; Dutch, "advocaat"; Norwegian, "advokat"; Russian, "advokat"; and so forth. But even a parochial, monolingual New York lawyer would be familiar with the New York State Bar Association's Rules of Professional Conduct, the preamble to which explains in its second sentence: "As a representative of clients, a lawyer assumes many roles, including advisor, *advocate*, negotiator, and evaluator" (New York Rules of Conduct with Comments, New York State Bar Association, *available at*:

 http://www.nysba.org/WorkArea/DownloadAsset.aspx?id=50671 [emphasis added]).

The majority's decision to dishonor D.J.'s designation of Mr. Bliss as his "significant individual" – purportedly because a "traditional attorney-client" relationship is anathema to the treatment planning process -- rests on a cartoonish version of what lawyers do. Even trial attorneys perform all kinds of tasks that never touch a courtroom. They conduct negotiations; counsel clients in areas that intertwine legal concerns with a variety of others; pass on information at their client's request; collect information and relay it to their clients; serve as an interface between the client and the client's family, friends and potential witnesses; and often provide business advice, marital advice, family advice, and advice and support in myriad other areas. Understanding and accepting what lawyers do in real life is particularly important as it relates to treatment planning for institutionalized sex offenders, whose relatives may want nothing to do with them or may

not have the means to travel to or otherwise participate in planning sessions, whose friends may likewise be unwilling or unable to do so, and whose only support in the the world, other than employees of the treatment facility, may be an MHLS lawyer.

"Cherry-picked" is the adjective the majority uses to describe the bushel of references to the word "advocate" in the legislative history (majority op. at 10), contending that other portions of the legislative history suggest the Legislature intended to limit "significant individual" to family, friends, and significant others. But only an untenably narrow view of lawyering would suggest that a list of "family, friends, significant others and similar individuals who have a personal relationship with a patient" (id.) presumptively does not include attorneys, even when a patient has chosen an MHLS lawyer in preference to, or because of the absence of, all other candidates.

More broadly, the legislative history evinces a clear desire to expand the options of patients who want someone to accompany them during the treatment planning process. If a patient designates someone as a "significant individual," the straightforward reading of the Legislature's intent is that such person would presumptively be included. If there were evidence suggesting a person the patient has requested is "unconcerned" with the patient's "general welfare," OMH could deny the request.[1] Here, however, there is neither evidence nor assertion that Mr. Bliss lacks concern for D.J.'s welfare.

---

[1] Unquestionably, some institutionalized sex offenders may have such severe mental health issues that they might designate someone wholly foreign to them as their "significant individual." Were, for example, a patient to designate the President of the United States, OMH surely would be able to deny the request on the ground that he was not "concerned with the welfare of the patient."

In the face of that total lack of evidence, the majority imposes a statutorily-absent and standardless burden on D.J. to prove that Mr. Bliss is "significant" to him and then complains that no showing of a significant relationship "was even attempted in this case" (majority op at 12). That is not true. The only evidence in the record as to the genuineness of the relationship is D.J.'s sworn statement that he "designate[s] Mr. Bliss as significant individual to me who is concerned with my welfare." No one has contradicted that assertion, and it is not at all clear how D.J. would go about satisfactorily proving the relationship's significance. Even worse, OMH imposed a further statutorily-absent requirement that Mr. Bliss recuse himself from representing D.J. should he ever prove to be a "significant individual" (a question the majority has explicitly left undecided). The only fair reading of the evidence in the record is that Mr. Bliss cares about D.J.'s welfare, that D.J. believes Mr. Bliss cares about his welfare, and that OMH's requirements impose a new burden on petitioners with no basis in law.

### III.

The final point worth emphasizing is how the majority's decision undermines the goals of the Legislature. Patients in cases like these are dangerous sex offenders who have committed extremely serious crimes. The natural consequence of such crimes is that, even were they not isolated and friendless before conviction, they are likely to be so afterwards. MHLS attorneys are well-versed in serving such clients. "Other than hospital personnel, the MHLS staff person is often the only outside individual to have close interaction and an

open channel of communication with MHLS's clients" (Prudenti, Gail [Hon.], Giving Voice to the Vulnerable, NYLJ [Jan. 2011]).

Although OMH grumbles that the inclusion of MHLS attorneys in the treatment planning would produce some vaguely-defined adversarial atmosphere and thereby undermine the process, those warnings are speculative at best and such a risk would exist with anyone. Family members and friends can be adversarial as well — they might even be lawyers! But as with those groups, it is also quite possible that the inclusion of attorneys with whom patients have a strong relationship will produce benefits to the patients. Other secure treatment facilities apparently recognize such benefits. The record contains affirmations from MHLS attorneys who work with facilities subject to § 29.13. Those attorneys note that in facilities run by the Office for People with Developmental Disabilities and in the St. Lawrence Psychiatric Center (which is operated by OMH), attorneys have been included in treatment planning without objection. Although different treatment facilities have reached inconsistent results on this issue, the Legislature was quite clear: it wanted to promote the inclusion of significant individuals to advocate for the patient, at the patient's election.

The need is particularly acute for isolated MHLS clients who have cognitive disabilities or other psychiatric limitations with which their attorneys become well-acquainted. Such a situation would make the inclusion of a trusted companion in the process particularly beneficial. OMH avers in its arguments that patients in such a position may "avail themselves of Disability Rights of New York, an independent private agency

designated by the Governor to conduct and coordinate protection and advocacy and client assistance programs for individuals with disabilities."   However, MHLS has asserted, without contradiction, that they can find no instances of DRNY intervening on behalf of a resident of a secured treatment facility, and that the DRNY mandate suggests DRNY would defer to MHLS should their advocacy ever overlap.  In any event, the legislature granted neither DRNY nor MHLS the right to determine whom the patient would choose as a "significant individual"; that right resides in the patient.

The majority's decision deprives individuals in secure treatment facilities of one of the few, and perhaps only, external sources of support in the treatment planning process. D.J. has cognitive disabilities and is on a specialized treatment track.  D.J. requested his MHLS attorney be involved in treatment planning to accompany him and advocate for him. D.J.'s request is both reasonable and understandable given what we know of life for those committed to secure treatment facilities.  It is also completely in line with the vision the Legislature had for "significant individuals" who could participate and "advocate" for patients in treatment planning.  The Court's decision ignores the Legislature's clear command and further isolates D.J.  One can only hope OMH appreciates the Legislature's decision and exercises its new Court-created discretion liberally to allow MHLS attorney participation when requested by a patient.

For the reasons above, I dissent.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order affirmed, without costs.  Opinion by Judge Stein.  Chief Judge DiFiore and Judges Rivera, Fahey, Garcia and Feinman concur.  Judge Wilson dissents in an opinion.

Decided February 14, 2019